UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRAYDEN HACHMEISTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-03783-JMS-DML |
| ) | |
| JEFFERY CLARK, et al. ) | |
| ) | |
| Defendants. ) | |

**Order Granting Defendants' Motion for Summary Judgment,
Denying Plaintiff's Motion for Declaratory Judgment,
and Denying Plaintiff's Motion for Summary Judgment**

Brayden Hachmeister brought this action alleging that the defendants failed to protect him from an attack by another inmate in an Indiana prison. All parties have moved for summary judgment. Because no reasonable jury could find that the defendants were deliberately indifferent to Mr. Hachmeister's safety, the defendants' motion for summary judgment is **granted**.

### I. Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, "the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## II.   Summary Judgment Evidence

### A.   The Attack on Mr. Hachmeister

Mr. Hachmeister bought a lot of commissary, and fellow inmate Diaunte Adams was in financial trouble. Dkt. 39-5 at 3:18−4:04 (Hachmeister interview). The two had always been friendly, *id.* at 1:20−1:40, but in the early morning of August 13, 2019, Mr. Adams threatened Mr. Hachmeister, "Either you give me your shit, or I'm going to beat your ass and take it," *id.* at 5:34−5:40. Mr. Hachmeister sought help from another inmate, *id.* at 2:20−2:55, but after breakfast Mr. Adams followed through on his threat, *id.* at 4:20−4:33. He entered Mr. Hachmeister's cell and immediately punched him. Mr. Hachmeister dropped to the fetal position, and then Mr. Adams delivered a combination of 20-to-30 punches and stomps. *Id.* at 22:57−21:33, 24:33−24:41.

The beating ended when an inmate in another cell, Martin Castillo, told Mr. Adams to knock it off. Mr. Adams left to confront Mr. Castillo, and Mr. Hachmeister found safety. Officers broke up the fight between Mr. Adams and Mr. Castillo, and they found Mr. Hachmeister sitting at a table, "visibly shaken." Dkt. 39-1 at 3 (Clark affidavit). Mr. Hachmeister was treated by the

medical staff and then sat for an interview with Officer Privett from internal affairs. *See generally* dkt. 39-5. Officer Privett was not responsible for separation orders or housing assignments. Dkt. 39-2 at 2 (Privett affidavit). After the interview, he created a report and sent it to prison administrators who made such decisions. *Id.* Mr. Hachmeister asserts that he and Mr. Adams were immediately moved to opposite sides of the prison, but Mr. Adams has threatened to kill him if he moves forward with criminal charges. Dkt. 52 at 4.

### B. Notice to Officer Clark

Officer Clark testifies that he arrived on the unit for his shift at 6:15 a.m. on the day of the attack. Dkt. 39-1 at 1; *see also* dkt. 22 at 1 (warden identifying Officers Haley Ranson and Brittany Feuston as the only staff on duty in Mr. Hachmeister's housing unit from 6:00 p.m. on August 12, 2019, until 6:00 a.m. on August 13, 2019). Mr. Hachmeister did not tell him about any issues with Mr. Adams. Dkt. 39-1 at 2. Shortly after arriving on the unit, Officer Clark heard loud noises coming from C-1, Mr. Hachmeister's housing pod. *Id.* Officer Clark stood up and looked out of the monitoring station to see Mr. Adams and Mr. Castillo fighting. *Id.* He called for backup and entered the pod. *Id.* Upon entry, he saw Mr. Hachmeister sitting at a table. *Id.* at 3. He never saw any incident between Mr. Hachmeister and another inmate. *Id.*

In an interview with internal affairs on the day of the attack, Mr. Hachmeister said that Mr. Adams began extorting him around 3:30 or 4:00 a.m., shortly after he returned from commissary. Dkt. 39-5 at 1:45−2:01, 3:18−3:37. He and Mr. Adams had been on friendly terms until that morning. *Id.* at 1:29−1:40. After Mr. Adams threatened him, Mr. Hachmeister asked for help from another inmate. *Id.* at 2:20−2:55. Mr. Hachmeister never mentioned discussing his fears with Officer Clark or any other prison staff member. *See generally* dkt. 39-5.

Since his internal affairs interview, Mr. Hachmeister's story has evolved. In his original complaint, he alleged that a male officer saw him "being assaulted in the face" by Mr. Adams between 4:00 and 5:45 a.m. on August 13, 2019. Dkt. 1 at 2. Mr. Hachmeister could not identify the officer, but knew that the officer was on shift from 6:00 p.m. on August 12, 2019, to 6:00 a.m. on August 13, 2019. *Id.* After the officer failed to intervene, Mr. Hachmeister felt that "any request [he made] verbally for help or extraction would cause [him] greater harm because [he] would be labeled as a snitch." *Id.* In his verified amended complaint, Mr. Hachmeister alleged that Officer Clark saw Mr. Adams punch him at 5:50 a.m., shortly before the full-on attack. Dkt. 24 at 2.

At the summary judgment stage, Mr. Hachmeister has abandoned any allegation that Officer Clark saw him get punched before 6:00 a.m. *See generally* dkt. 52 (Hachmeister motion for summary judgment) and dkt. 53 (response to defendants' motion for summary judgment). He has now pivoted to asserting that he *told* Officer Clark about his issues with Mr. Adams before the attack. *See* dkt. 52 at 1 ("Plaintiff . . . verbally informed Officer Jeffrey Clark about his concerns before C-1 pod was released to commissary the morning of August 13, 2019, then again once he returned from commissary."); dkt. 53 at 4 ("Officer Clark was verbally informed about Plaintiff's, Hachmeister issues and safety concerns prior to the fight. Plaintiff spoke with Mr. Clark regarding an altercation him and another offender had before walking out to commissary." (sic throughout)).

As evidence for this latest version of events, Mr. Hachmeister points to an unsworn, unstamped prison grievance dated August 20, 2019. Dkt. 53-1 at 9. On the grievance, Mr. Hachmeister wrote that he "went and told Officer Clark that [he] was having problems with another offender," but Officer Clark "brushed the situation off." *Id.* He also wrote that the day before the attack, he "informed Officer Clark and pleaded with him for help," but Officer Clark responded, "You're a grown man. You can handle your own." *Id.*

Mr. Hachmeister also asserts that Officer Clark saw the 6:30 a.m. attack but took no action until Mr. Adams and Mr. Castillo were fighting. Dkt. 52 at 2; dkt. 53 at 3. He provides no evidence to support this assertion.

### III. Discussion

To survive summary judgment, Mr. Hachmeister must point to admissible evidence from which a reasonable jury could find that (1) he faced an excessive risk to his health or safety and (2) the defendants knew about the risk but were deliberately indifferent to it. *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

#### A. Officer Clark

There can be no dispute that by the time of the attack, Mr. Hachmeister faced an excessive risk to his safety. But based on the evidence before the Court, no reasonable jury could find that Officer Clark knew of and disregarded an excessive risk to Mr. Hachmeister's safety.

To be liable for failure to protect, a defendant must have had "actual, and not merely constructive, knowledge of the risk" to the plaintiff's safety." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). Usually, a plaintiff proves the defendant's knowledge of an excessive risk by "showing that he complained to prison officials about a specific threat to his safety." *Id.* at 480 (quotation marks omitted). "Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Id.* at 480−81.

Viewing the evidence in the light most favorable to Mr. Hachmeister, Officer Clark was on notice that Mr. Hachmeister was "having problems with another offender." Dkt. 53-1 at 9. Mr. Hachmeister also "pleaded with [Officer Clark] for help." *Id.* These vague warnings, which do not mention a specific inmate or risk of harm, did not put Officer Clark on notice of an excessive

5

risk to Mr. Hachmeister's safety. *See Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) (officials not put on notice when plaintiff told them "that he was afraid and that he wanted to be moved"); *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002) (officials not put on notice when plaintiff told them "he 'was having problems in the block' and 'needed to be removed'").

Mr. Hachmeister's assertion that Officer Clark saw Mr. Adams attack Mr. Hachmeister but failed to intervene is supported by no evidence. The Court therefore treats Officer Clark's affidavit as undisputed evidence that he did not see the attack. Dkt. 39-1 at 2; *see* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion.").

In light of the undisputed facts,[1] no reasonable jury could find that Officer Clark was deliberately indifferent to Mr. Hachmeister's safety. Officer Clark is therefore entitled to summary judgment.

### B.     Officer Privett

Mr. Hachmeister alleges that Officer Privett failed to enter a separation order or keep Mr. Adams in segregation to protect him from further attacks. Dkt. 24 at 3. Officer Privett is entitled to summary judgment for two reasons. First, the evidence is undisputed that Officer Privett is not responsible for making separation or housing decisions. Dkt. 39-2 at 2. He interviewed Mr. Hachmeister, drafted a report, and forwarded it to the facility head to make housing decisions

---

[1] The defendants argue that Mr. Hachmeister's unsworn, unstamped grievance is not the kind of evidence that can defeat summary judgment. Dkt. 56 at 2. And they may have a point. *See Olson v. Morgan*, 750 F.3d 708, 714 ("[I]t's an open question in this circuit whether anything more than an unsworn statement is needed to oppose summary judgment."). But what's good for the goose is good for the gander. The defendants ask the Court to rely on a written timeline of events "that was created based on a review of the camera footage" of the August 13 attack. Dkt. 38 at 3; *see* dkt. 39-4 at 33−34 (timeline). There is no verifying affidavit, declaration, or even signature from the timeline's unidentified author, and the defendants did not submit the video itself. The Court need not sort through the parties' evidentiary arguments, because even in the best case scenario for Mr. Hachmeister—considering his grievance and setting aside the defendants' timeline—the defendants are entitled to summary judgment.

for Mr. Hachmeister and Mr. Adams. *Id.* Second, there is no evidence that Mr. Adams attacked Mr. Hachmeister again after the August 13, 2019 incident. A plaintiff cannot win damages[2] for a failure-to-protect claim based on an attack that has not happened. *Babcock v. White*, 102 F.3d 267, 270 (7th Cir. 1996) (no damages for deliberate indifference when attack "never materialized"); *Brown v. Scott*, 720 F. App'x 296, 298 (7th Cir. 2017) ("[F]ear alone, unlike the reasonably preventable assault itself, does not give rise to a constitutional claim." (quotation marks omitted)). Officer Privett is therefore entitled to summary judgment.

### IV. Mr. Hachmeister's Motions

Because the defendants are entitled to summary judgment, Mr. Hachmeister's motion for summary judgment, dkt. [52], and motion for declaratory judgment, dkt. [55], are necessarily **denied**.

### V. Conclusion

The defendants' motion for summary judgment, dkt. [37], is **granted**. Mr. Hachmeister's motion for summary judgment, dkt. [52], and motion for declaratory judgment, dkt. [55], are **denied**. Final judgment shall now enter.

**IT IS SO ORDERED.**

Date: 8/10/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[2] The amended complaint mentions unspecified injunctive relief in the "exhaustion of remedies" section. Dkt. 24 at 3 ("Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this Court grants the declaratory and injunctive relief which plaintiff seeks."). But his prayer for relief does not seek an injunction of any kind. *Id.*

Distribution:

BRAYDEN HACHMEISTER
255426
NEW CASTLE – CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Aubrey Jean Crist
acrist@bbkcc.com

Adam Garth Forrest
BBFCS ATTORNEYS
aforrest@bbfcslaw.com